

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 18, 2024

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Michols Orsini Quintero*, S6 19 Cr. 144 (AKH)

Dear Judge Hellerstein:

      The Government respectfully submits this letter in advance of sentencing in the above-referenced case, currently scheduled for July 25, 2024, at 11:00 a.m., and in response to the defendant's July 16, 2024 sentencing submission. The defendant, Michols Orsini Quintero, pled guilty to the single count above-referenced information (the "Information") for conspiracy to violate and evade the Foreign Narcotics Kingpin Designation Act (the "Kingpin Act") and the Kingpin Act regulations, in connection with a scheme to help Tareck Zaidan El Aissami Maddah and Samark Jose Lopez Bello violate and evade sanctions imposed by the U.S. Department of the Treasury's Office of Foreign Assets Control, in violation of Title 21, United States Code, Sections 1904(c)(1)-(2) and 1906(a)(1), Title 18, United States Code, Sections 371 and 3238, and Title 31, Code of Federal Regulations, Sections 598.203(a), 598.204, and 598.406. The parties agree that the defendant has an applicable range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") of 30 to 37 months' imprisonment. During the pendency of his case, the defendant was incarcerated for approximately 21 months before being released on bail to home incarceration for approximately nine months until downgraded to home detention for the last approximately 34 months to date. Based on a consideration of the Guidelines and the other factors set forth in Title 18, United States Code, Section 3553(a), the Government respectfully submits that the sentence recommended by the Probation Office of time served and three years' supervised release is sufficient but not greater than necessary to achieve the purposes of sentencing in this case.

      **I.  Background**

          **A.  Offense Conduct**

      As set forth in the Pre-Sentence Report ("PSR"), between mid-2017 and March 2019, the defendant participated in a scheme to help two sanctioned members of the Venezuelan political elite, former Venezuelan Vice President and then current Minister of Industry and National Production, Tareck Zaidan El Aissami Maddah, and his associate, Venezuelan businessman Samark Jose Lopez Bello, violate and evade sanctions imposed by the U.S. Department of the

*U.S. v. Orsini Quintero*, 19 Cr. 144 (AKH)                                                              Page 2 of 6
Hon. Alvin K. Hellerstein
July 18, 2024

Treasury's Office of Foreign Assets Control ("OFAC") by providing private flights and air charter services to them, in violation of such sanctions, as further described below. (PSR ¶¶ 13-34).

On February 13, 2017, OFAC designated El Aissami and Lopez Bello as Specially Designated Narcotics Traffickers ("SDNTs"), pursuant to the Kingpin Act. (PSR ¶ 18). OFAC's designations were predicated on their involvement in state-sponsored drug trafficking and money laundering activities in Venezuela dating back to at least 2006. (PSR ¶ 18). El Aissami, a Venezuelan citizen with family ties to Syria, supported former Venezuelan president Hugo Rafael Chavez Frias prior to Chavez's death in 2013. (PSR ¶ 16). He held various positions in the Venezuelan government between approximately 2003 and 2016, including Vice President of Venezuela. (PSR ¶ 16). In June 2018, El Aissami transitioned from Vice President to the position of Minister of Industry and National Production. (PSR ¶¶ 19). El Aissami was also named one of the directors of Venezuela's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"), which OFAC sanctioned pursuant to a January 2019 Executive Order. (PSR ¶ 19). Lopez Bello is a Venezuelan citizen who acted as a front man and money launderer for El Aissami and other Venezuelan officials, and has engaged in corrupt transactions involving PDVSA. (PSR ¶¶ 18, 23).

After the SDNT designations, co-conspirators Victor Mones Coro and Alejandro Miguel Leon Maal assisted El Aissami and Lopez Bello in obtaining private charter services on flights outside the United States. Mones Coro, who is a Venezuela-born naturalized U.S. citizen, operated the Florida-based charter-services company American Charter Services LLC ("American Charter"). (PSR ¶¶ 24, 29). Leon Maal worked with Mones Coro at American Charter and also operated a separate Florida-based charter and flight services company. (PSR ¶¶ 26, 29). Mones Coro and American Charter had a longstanding commercial relationship with El Aissami and Lopez Bello dating back to at least 2014, managing or operating multiple aircraft for Lopez Bello and using them for charter flights for other prominent Venezuelans, including El Aissami. (PSR ¶ 30). After announcement of the OFAC sanctions, Mones Coro agreed with Alejandro Javier Marin, another co-conspirator working to provide flights for El Aissami and Lopez Bello, that they and American Charter would continue to provide flights for El Aissami and Lopez Bello. (PSR ¶¶ 25, 31) To avoid detection, Mones Coro and the others stopped arranging and providing flights to or from the United States after the SDNT designations, but continued arranging and providing flights to and from destinations outside the U.S. (PSR ¶ 31).

During this post-designation time period, the defendant piloted flights for Mones Coro, Leon Maal, and American Charter, and agreed to transport El Aissami and Lopez Bello on such flights. (PSR ¶¶ 27, 31; 9/26/23 Plea Tr. at 4). On or about August 28, 2018, agents with Homeland Security Investigations interviewed the defendant regarding his work for Mones Coro and Leon Maal. (PSR ¶ 32; 9/26/23 Plea Tr. at 5-12). The defendant admitted to the agents having flown El Aissami and Lopez Bello such flights. (PSR ¶ 32; 9/26/23 Plea Tr. at 5-12). The defendant further agreed to conduct recorded calls separately to Mones Coro and Leon Maal. (PSR ¶ 32). During the call with Mones Coro, the defendant told Mones Coro he had been contacted by law enforcement and then discussed El Aissami and Lopez Bello with Mones Coro. (PSR ¶ 32). Mones Coro indicated that law enforcement had probably contacted the defendant "because of the stuff . . .you know, the passengers down there and stuff." (PSR ¶ 32). Mones Coro suggested that the defendant "play dumb" and tell law enforcement that he had not "flown in a while," and that

"the important thing is not to . . . mix one person with the other, right . . . that's what they're trying to do." (PSR ¶ 32). During the recorded call with Leon Maal, Leon Maal suggested that the defendant should tell law enforcement if asked about "the people that we move in Venezuela, about the passengers we move"—at one point referring to them as "the bad people"—that "[i]n fact, I haven't flow in a while" and "that, you know . . . that's not that has nothing to, to, you know" that they are "flown by other people there in Venezuela." (PSR ¶ 32). Leon Maal also instructed the defendant to emphasize that he does not "deal with payments, or who pays, or none of that stuff." (PSR ¶ 32).

When the defendant spoke to the agents, he understood that El Aissami and Lopez Bello were being investigated. (9/26/23 Plea Tr. at 12). The agents instructed the defendant at the conclusion of the interview to inform them when he is asked to transport El Aissami and Lopez Bello again. (9/26/23 Plea Tr. at 15-16). The defendant proceeded to transport El Aissami and Lopez Bello on multiple occasions in the ensuing months without informing the HSI agents. (9/26/23 Plea Tr. at 15-17, 19-20). He did not inform the agents on those occasions because he was scared and did not want the agents to know such information. (9/26/23 Plea Tr. at 20). After the HSI interview, the defendant further avoided knowing or learning of the status of El Aissami and Lopez Bello or "about their problems with the law" and further "didn't want to think they were doing bad things." (9/26/23 Plea Tr. at 6, 12, 13, 14, 16, 19).

### B. Procedural History

After his arrest on Mach 8, 2019, the defendant was initially detained and then later released on bail on December 18, 2020 to home incarceration in the Southern District of Florida. (D.E. 160, 166, 167 192). On September 17, 2021, the Court granted the defendant's application for a modification of bail conditions to include home detention in lieu of home incarceration (D.E. 230). On August 10, 2023, the defendant waived indictment and was arraigned on the single-count Information. (PSR ¶ 1). He pled guilty to the Information, pursuant to a plea agreement with the Government, dated August 10, 2023 (the "Plea Agreement"), over the course of a change-of-plea hearing conducted on August 10, 2023 and September 26, 2023. (PSR ¶¶ 1, 4; 8/10/23 Plea Tr.; 9/26/23 Plea Tr.).

### C. Plea Agreement, Probation's Recommendation, and Related Guidelines Calculations

Under the Plea Agreement, the parties stipulated to a Guidelines range of 37 to 46 months' imprisonment (the "Stipulated Guidelines Range"). (PSR ¶ 5). That calculation is based on, in part, a base offense level of 26, under U.S.S.G § 2M5.1(a)(2), as applied pursuant to §§ 2X1.1(a), 1B1.2(a), and 2X5.1, because national security controls—specifically, the Foreign Narcotics Kingpin Designation Act and the Kingpin Act Regulations—were evaded. (PSR ¶ 5). The parties further stipulated to a two-level reduction under U.S.S.G. § 3B1.2(b) because the defendant was a minor participant in the conspiracy charged in the Information. (PSR ¶ 5). After a three-level decrease for acceptance of responsibility under U.S.S.G. §3B1.1, the resulting offense level in the Plea Agreement is 21. (PSR ¶ 5). Further, the parties stipulated that the defendant has no criminal history points and is in criminal history category I, which results in the Stipulated Guidelines Range of 37 to 46 months' imprisonment. (PSR ¶ 5).

*U.S. v. Orsini Quintero*, 19 Cr. 144 (AKH)                                                                                   Page 4 of 6
Hon. Alvin K. Hellerstein
July 18, 2024

The calculation of the applicable Guidelines range in the PSR by the U.S. Probation Office (the "Probation Office") is consistent with that in the Plea Agreement except that the Probation Office applied a further two-level reduction in the offense level, to 19, because the defendant meets the new zero-point offender criteria under U.S.S.G. §§ 4C1.1(a) and (b) in the November 1, 2023 Guidelines Manual, which was not in effect at the time of the Plea Agreement but is now in effect. (*See* PSR ¶¶ 40-58, 97-98, and p. 27). The Government concurs with the two-level reduction under §§ 4C1.1(a) and (b). Accordingly, the applicable Guidelines range is 30 to 37 months' imprisonment. (PSR ¶¶ 97-98 and P. 27).

In the PSR, the Probation Office recommends a sentence of time served, three years' supervised release, and a $1,000 fine, citing the fact that the defendant was a minor participant in the scheme to assist El Aissami and Lopez Bello evade U.S. sanctions and has otherwise led a law-abiding life. (PSR at pp. 27-28). The Probation Office also underscores the defendant's prior military service in Venezuela, history of stable employment, and commitment to his family. (PSR at p. 28). Finally, the Probation Office notes the defendant's pre-trial custodial term of over 21 months' imprisonment and his later compliance with the conditions of his release since being granted bail in December 2020. (PSR at p. 28).

**II.   Discussion**

    **A.  Applicable Law**

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker,* 543 U.S. 220 (2005), and *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

*U.S. v. Orsini Quintero*, 19 Cr. 144 (AKH)                                              Page 5 of 6
Hon. Alvin K. Hellerstein
July 18, 2024

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant;

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Sentence of Time Served Is Appropriate in this Case

In light of the nature and circumstances of the instant offense, as well as the history and characteristics of the defendant, the Government respectfully submits that the sentence of time served, recommended by the Probation Office—inclusive of a 21-month custodial term already served followed by nine months of home incarceration and 34 subsequent months of home detention—is sufficient but not greater than necessary to achieve the purposes of sentencing in this case, taking into account the factors in 18 U.S.C. § 3553(a).

Such a sentence would appropriately reflect the nature and circumstances of the defendant's conduct and provide just punishment. Any assistance rendered to individuals seeking to violate and evade U.S. sanctions, no matter how limited, is serious and undercuts the efficacy of such measures in achieving U.S. foreign policy objectives and protecting national security interests. The provision of illegal services to Venezuelan officials and their associates came at a time when the United States and its allies were engaged in the crucial undertaking of depriving Venezuela and its leadership of resources for its malign, undemocratic, and deadly activities—including its systematic and oftentimes fatal repression of activists, its subversion of Venezuelan democratic institutions, and its corrupt plundering of Venezuela's natural resources. The flights that American Charter and the co-conspirators arranged and provided shuttled the sanctioned leaders to, among other places, destinations of strategic importance to Venezuela and its teetering economy—including Russia and Turkey. (PSR ¶ 20). Thus, the sentence imposed should reflect the seriousness of this conduct.

In addition, while the Government agrees with the Probation Office that the conduct of this defendant appears to be an anomaly in an otherwise mostly law-abiding life, and that he is sufficiently deterred from future criminal conduct, the sentence imposed by the Court should afford general deterrence and promote respect for the law. Such a sentence, inclusive of the prior custodial term, sends a message to others that any assistance rendered in the evasion and violation of U.S. sanctions carries significant consequences.

Balancing the offense conduct with the mitigating factors identified by the Probation Office—namely, the defendant's lack of criminal history, long-term compliance with community-based supervision over the last nearly four years, and the defendant's very particular background and characteristics—the Government respectfully submits that the sentence recommended by the Probation Office is sufficient but not greater than necessary in this case. Such a sentence would confirm for the defendant that his conduct—even if limited—is serious and deserving of

*U.S. v. Orsini Quintero*, 19 Cr. 144 (AKH)  Page 6 of 6
Hon. Alvin K. Hellerstein
July 18, 2024

punishment, and will hopefully deter him from similar conduct in the future, while balancing the mitigation that he presents.

### III. Conclusion

Accordingly, for the reasons set forth above, the Government respectfully submits that the sentence recommended by the Probation Office is sufficient but not greater than necessary to achieve the purposes of sentencing in this case.

                                                Respectfully submitted,

                                                DAMIAN WILLIAMS
                                                United States Attorney

                                        By:   /s/
                                                Samuel Adelsberg
                                                Kaylan Lasky
                                                Kevin Sullivan
                                                Assistant United States Attorney
                                                (212) 637-2494 / 2315 / 1587

cc:   Sabrina Shroff, Esq. (by ECF)